UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

EDWARD HOLMES,

    Plaintiff,

v.

CONSTRUCTION TURNAROUND
SERVICES, DON SCHEXNIDER, GRANT
DALTON and AARON MAY,

    Defendants.

Case No. 16-cv-1338-JPG-DGW

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion to remand filed by plaintiff Edward Holmes (Doc. 24). Defendants Aaron May, Construction & Turnaround Services, LLC ("CTS"; misnamed in the complaint as Construction Turnaround Services) and Don Schexnider have responded to the motion (Docs. 31 & 32). This motion involves important issues regarding the Court's subject matter jurisdiction to hear this case and arises from a multifaceted jurisdictional history.

**I.    Background**

Holmes filed this case in October 2016 in the Circuit Court for the Third Judicial Circuit, Madison County, Illinois (Doc. 1-1). He complains that CTS, his employer, terminated him in October 2015 in retaliation for seeking workers' compensation benefits following a workplace injury (Count I). He also claims that defendants Schexnider and Grant Dalton, two of his supervisors, were responsible for his wrongful termination because, motivated by personal animus, they inadequately investigated the situation and gave incomplete and inaccurate information to CTS about Holmes' injury. He has sued each of them for intentional interference with economic advantage (Counts II and III, respectively). In addition, Holmes alleges that

defendant Aaron May, the union steward for Boilermakers Local 363, failed to give CTS information regarding Holmes' injury, which led to CTS's decision to fire Holmes. Holmes claims this also amounts to intentional interference with economic advantage (Count IV).

In December 2016, May timely removed this case to federal court, claiming that Count IV against him was completely preempted because it presented a claim for breach of the federal duty of fair labor representation, a federal question. *See* 28 U.S.C. §§ 1331 & 1441. He believes Count IV was actually a duty of fair representation claim because the tasks Holmes claimed May performed improperly were tasks governed by May's duty to fairly represent Holmes as his union representative in labor negotiations and enforcement. .

Ten days later, CTS filed its own notice of removal. In its notice, CTS claims removal was proper based on original diversity jurisdiction. *See* 28 U.S.C. §§ 1332(a) & 1441. CTS alleges that Holmes and Schexnider are citizens of Louisiana, Dalton is a citizen of Arkansas, and May is a citizen of Oklahoma. CTS, a limited liability company, also states that it has five individual members, all of whom reside in Arkansas and are "[t]herefore . . . citizens of Oklahoma." Notice of Removal at 2 (Doc. 8). CTS does not mention the citizenship of Integrated Services, LLC, which it states in its corporate disclosure statement (Doc. 12) wholly owns CTS. Realizing that Holmes' and Schexnider's shared Louisiana citizenship destroys complete diversity, CTS alleges that Holmes has fraudulently joined Schexnider, against whom he cannot make out a case for intentional interference with economic advantage, so the Court should ignore Schexnider's citizenship for the purposes of determining whether it has diversity subject matter jurisdiction.

A week later, CTS asked for leave to amend its notice of removal to make two substantive changes (Doc. 19). First, it realized it had inadvertently alleged that May is a citizen

2

of Oklahoma when in reality he is a citizen of Illinois. However, the acknowledgement that May is a citizen of Illinois runs CTS smack into the forum defendant rule, which prohibits removal based exclusively on the Court's original diversity jurisdiction if one of the defendants is a citizen of the forum state. *See* 28 U.S.C. § 1441(b)(2). For this reason, CTS sought its second change: to add the argument that May also was fraudulently joined since, for the same reason Holmes has no claim against Schexnider, he cannot make out a case against May for intentional interference with economic advantage. Therefore, CTS urges the Court to disregard May's citizenship for the purposes of applying the forum defendant rule.

In January 2017, Holmes filed the pending motion to remand (Doc. 24). He argues that this Court does not have original federal diversity jurisdiction over this case under 28 U.S.C. § 1332(a) because he and Schexnider are not completely diverse and because CTS has not properly alleged its own citizenship. He also argues that the forum defendant rule prevents removal in light of May's Illinois citizenship. Holmes further argues that the Court does not have original federal question jurisdiction under 28 U.S.C. § 1331 because he has alleged a *bona fide* state tort claim against May, not a claim for breach of the federal duty of fair representation. May, CTS and Schexnider have responded to the motion (Docs. 31 & 32).

In April 2017, Holmes filed a motion to voluntarily dismiss Count IV, the only count against defendant May, without prejudice, which the Court construed as a notice of dismissal of Count IV pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). The Court found the claim against May to be dismissed.[1]

In addition, at various times throughout this case, each defendant has moved to dismiss

---

[1] The Court is aware that Holmes should have filed an amended pleading omitting the claim against May rather than seeking to dismiss less than the entire action. *See Taylor v. Brown*, 787 F.3d 851, 857 (7th Cir. 2015). However, the result of an amended pleading has been achieved; the claim against May is no longer in this case.

for failure to plead sufficient facts to state a claim (Docs. 14, 18 & 37).

The Court now turns to the question of its jurisdiction to hear this case.

## II. Analysis

### A. Federal Question Jurisdiction

On December 12, 2016, May removed this case based on the Court's original federal question jurisdiction. A defendant may remove to federal court a case filed in state court if the federal court would have had jurisdiction to hear the case when the plaintiff originally filed it. 28 U.S.C. § 1441(a); *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009). "The party seeking removal has the burden of establishing federal jurisdiction, and federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Schur*, 577 F.3d at 758 (citing *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993)). Here, May asserted that the Court had original federal question jurisdiction over Count IV pursuant to 28 U.S.C. § 1331. He based this assertion on the theory that the intentional interference with economic advantage claim was, in fact, a federal claim for breach of the duty of fair representation that a labor union owes its bargaining unit members.

Section 1331 confers upon federal courts original subject matter jurisdiction over civil actions "arising under" the laws of the United States. As a general rule, whether a case arises under federal law is determined by what appears in the plaintiff's well pleaded complaint as "[i]t is long settled law that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987) (citing *Gully v. First Nat'l Bank*, 299 U.S. 109 (1936)). "Thus the defendant cannot cause a transfer to federal court simply by asserting a federal question in his responsive pleading." *Rice v. Panchal*, 65 F.3d 637, 639 (7th Cir. 1995). This is the so-called "well-

pleaded complaint rule."

There is, however, an exception to the to the well-pleaded complaint rule – the complete preemption doctrine. This jurisdictional doctrine applies where Congress has "so completely pre-empt[ed] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Taylor*, 481 U.S. at 63-64. "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987). Thus, "federal subject matter jurisdiction exists if the complaint concerns an area of law 'completely preempted' by federal law, even if the complaint does not mention a federal basis of jurisdiction." *Jass v. Prudential Health Care Plan*, 88 F.3d 1482, 1487 (7th Cir. 1996). For example, the doctrine of complete preemption applies to claims for employment benefits within the scope of § 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132. *Taylor,* 481 U.S. at 62-63. Thus, claims pled as state law breach of contract or tort claims for benefits under an ERISA plan are, in fact, ERISA claims and will support federal question jurisdiction. *Id.* at 67.

Congress has also completely preempted state law claims "founded directly on rights created by collective bargaining agreements" such as claims for breach of a breach of a collective bargaining agreement ("CBA"). *Caterpillar*, 482 U.S. at 393-94; *Franchise Tax Board of Cal. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 23-24 (1983); *Avco Corp. v. Aero Lodge No. 735, Int'l Assoc. of Machinists,* 390 U.S. 557, 560 (1968). Thus, any claim for breach of a CBA is necessarily federal in nature and properly construed as under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. *See Beneficial Nat'l Bank v. Anderson,* 539 U.S. 1, 7 (2003). The same is true for claims "substantially dependent on

analysis" of a CBA. *International Bhd. of Elec. Workers v. Hechler*, 481 U.S. 851, 859, n. 3 (1987). The rationale behind complete preemption under § 301 is that uniform federal interpretation of the terms of CBAs will "promote the peaceable, consistent resolution of labor-management disputes." *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 404 (1988).

Some courts have held that § 301's preemption extends to claims that a union did not abide by its duty of fair representation of a bargaining unit member. *Richardson v. United Steelworkers of Am.,* 864 F.2d 1162, 1169 (5th Cir. 1989); *Marrero v. Modern Maintenance Bldg. Servs., Inc.,* 318 F. Supp. 2d 721, 724 (E.D. Wis. 2004). The duty of fair representation is implied from the union's exclusive representation of workers in its bargaining unit, *see* National Labor Relations Act ("NLRA") § 9(a), 29 U.S.C. § 159(a), and is "a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes,* 386 U.S. 171, 177 (1967). The duty of fair representation doctrine plays a "unique role . . . in the scheme of federal labor laws" and has an "important relationship to the judicial enforcement of collective bargaining agreements." *Id.* at 188. In *Richardson*, the Fifth Circuit Court of Appeals held that the duty of fair representation under the NLRA "completely preempts state law because of the congressional intent that federal law, developed to further the goals of the NLRA, entirely govern the duties which an NLRA collective bargaining representative owes, by virtue of its position as such, to the workers it represents in that capacity." *Richardson*, 864 F.2d at 1169. The Seventh Circuit Court of Appeals has acknowledged that "fair representation cases are grounded in federal law and are within the federal question jurisdiction of the district court," *Nelson v. Stewart*, 422 F.3d 463, 470 n. 5 (7th Cir. 2005), and has assumed without deciding that *Richardson* and other courts of the same mind are correct "that a union's implied duty of fair

representation involving a section 301 contract effects complete preemption," *id.*, at 470.

The Court finds that Count IV against May is completely preempted by federal law regarding the duty of fair representation. Although Holmes does not expressly allege it in his complaint, it is clear he is represented by a union – subsequent filings reveal that to be Boilermakers Local 363 – and his employment is governed by a CBA. In his complaint, Holmes alleges May was the contact for workers to use to report issues on the job – again, subsequent filings reveal he was the union steward. It is clear from the complaint that it was in his role as union steward that May participated in the investigation of Holmes' work injury, presumably so that the union could be sure CTS acted in accordance with the CBA in response to that injury. Holmes argues that May's participation was essentially in bad faith because May intentionally provided incomplete or inaccurate information to CTS and failed to perform an adequate investigation, which led to Holmes' termination. This is at heart a challenge to the union's duty to represent Holmes fairly and in good faith in connection with his CBA-governed employment, a claim completely preempted by federal law. Thus, Count IV of Holmes' complaint presented a federal question, and removal was proper.

It is of no importance that May and Count IV have since been dismissed. Generally, the jurisdiction of a federal court is determined at the time of removal, and nothing occurring after removal affects that jurisdiction. *In re Burlington N. Santa Fe. Ry. Co.,* 606 F.3d 379, 380 (7th Cir. 2010) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 293 (1938)). This Court had original federal question jurisdiction over Count IV at the time of removal, so removal was – and remains – proper. Additionally, at the time of removal, the Court had at a minimum (as will be explained later) – and continues to have – supplemental jurisdiction over the other claims in this case because they were so related to Count IV that they formed part of the same

case or controversy. *See* 28 U.S.C. § 1367(a).

The dismissal of Count IV from this case raises the question of whether the Court should exercise its discretion to remand the remaining claims over which it has supplemental jurisdiction in light of the termination of the only claim over which it has original federal jurisdiction. A district court "may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

Above the Court noted that "at a minimum" it has supplemental jurisdiction over the remaining claims, which would force the question whether to remand them under § 1367(c)(3). CTS and Schexnider argue that the Court need not make that decision because, in addition to having original federal question jurisdiction, the Court also has original diversity jurisdiction over the case, *see* 28 U.S.C. § 1332(a), so it must remain in federal Court even without Count IV. The Court turns to the question of diversity jurisdiction.

B. Diversity Jurisdiction

In its notice of removal, CTS asserts that this case is removable because the Court has original diversity jurisdiction. A federal court has diversity jurisdiction where the parties are completely diverse – all opposing parties are citizens of different states than all of their opponents – and the matter in controversy, excluding interest and costs, exceeds $75,000. *See* 28 U.S.C. § 1332(a); *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806). CTS acknowledges that the parties are not completely diverse – Holmes and Schexnider are both citizens of Louisiana – but it urges the Court to disregard Schexnider's citizenship because Holmes has fraudulently joined him in this case.

The doctrine of fraudulent joinder is based on the principle that a plaintiff cannot defeat a

defendant's right to removal by naming or joining a nondiverse party against whom it has no chance of success. *Morris v. Nuzzo*, 718 F.3d 660, 666 (7th Cir. 2013); *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 763 (7th Cir. 2009); *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993). The Court must ignore the citizenship of a fraudulently joined defendant when determining if it has diversity jurisdiction. *Morris*, 718 F.3d at 666; *Schur*, 577 F.3d at 763; *Gottlieb*, 990 F.2d at 327. If diversity jurisdiction exists once the fraudulently joined party's citizenship has been disregarded, the Court may dismiss the fraudulently joined defendant and continue to exercise jurisdiction over the case. *Morris*, 718 F.3d at 666; *Schur*, 577 F.3d at 763. The party invoking the Court's jurisdiction bears a heavy burden of persuasion to demonstrate fraudulent joinder. *Schur*, 577 F.3d at 763. Doubts about whether a defendant was fraudulently joined and whether removal was, as a consequence, proper must be resolved in favor of the plaintiff. *Morris*, 718 F.3d at 668. Fraudulent joinder must be proved by clear and convincing evidence. 5 James W. Moore *et al.*, *Moore's Federal Practice* § 102.21[5][a] (3d ed. 2002).

Fraudulent joinder can occur in two circumstances: (1) when there is no possibility that a plaintiff can state a cause of action against a nondiverse defendant or (2) where there has been outright fraud in plaintiff's pleading of jurisdictional facts. *Gottlieb*, 990 F.2d at 327. To establish fraudulent joinder under the first prong, a defendant must demonstrate that, "after resolving all issues of fact *and law* in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant." *Poulos v. Naas Foods, Inc.,* 959 F.2d 69, 73 (7th Cir. 1992) (emphasis in original); *accord Morris*, 718 F.3d at 666; *Schur*, 577 F.3d at 764. If there is "any reasonable possibility," *Poulos*, 959 F.2d at 73, that the plaintiff could succeed against a defendant, the defendant will not be deemed fraudulently joined. *Schur*, 577 F.3d at 764. It is

9

the first prong of fraudulent joinder on which CTS and Schexnider rely – that there is no possibility that Holmes can prevail against Schexnider for intentional interference with economic advantage.

Under Illinois law, which all parties assume applies, the elements of a cause of action for intentional interference with economic advantage in the employment context are:

> (1) that he had a reasonable expectation of continued employment; (2) that the defendants knew of the expectancy; (3) that their intentional and unjustified interference caused the termination of the employment; and (4) damages.

*Harrison v. Addington*, 955 N.E.2d 700, 708 (Ill. App. Ct. 2011) (citing *Anderson v. Vanden Dorpel*, 667 N.E.2d 1296, 1299 (Ill. 1996); *Fellhauer v. City of Geneva*, 568 N.E.2d 870, 878 (Ill. 1991); *Vickers v. Abbott Labs.*, 719 N.E.2d 1101, 1116 (Ill. App. Ct. 1999)). The interference must have been unjustified and malicious. *Vickers*, 719 N.E.2d at 1116 (citing *Fellhauer*, 568 N.E.2d at 878). Additionally, the business relationship with which the defendant is alleged to have interfered must have been with a third party. *Boffa Surgical Grp. LLC v. Managed Healthcare Assocs. Ltd.*, 47 N.E.3d 569, 577 (Ill. App. Ct. 2015); *see Fellhauer*, 568 N.E.2d at 878.

"Generally, a corporate officer cannot interfere with the continued employment of an employee of the corporation because the officer acts on behalf of the corporation," *Harrison*, 955 N.E.2d at 708, so no third party is involved, *see Eisenbach v. Esformes*, 582 N.E.2d 196, 199-200 (Ill. App. Ct. 1991). *See Kelman v. Woolrich, Inc.*, No. 99 C 5814, 2002 WL 356389, at *12 (N.D. Ill. Mar. 5, 2002) (claim normally does not lie against "corporate officers, supervisors or co-workers, who are generally shielded from personal liability by the 'corporate officer' privilege in taking action on behalf of the corporation"). The exception to this general rule is where officers "act solely for their own gain or solely for the purpose of harming plaintiff since

10

such conduct is not undertaken to further the corporation's interest." *Id.* at 709 (internal quotations omitted).

Resolving all issues of fact and law in Holmes' favor, the Court finds Holmes did not fraudulently join Schexnider in this case. Holmes alleges that Schexnider, one of his supervisors, provided incomplete and inaccurate information to CTS and failed to adequately investigate Holmes' injury, which led CTS to terminate Holmes. He alleges that Schexnider "acted maliciously with personal animosity against Holmes and . . . for his own personal interest contrary to those of the corporation." Compl. Ct. II, ¶ 9. For purposes of determining the Court's jurisdiction, this is sufficient to state a claim for intentional interference with economic advantage that fits within the exception allowing liability for a supervisor. Thus, CTS and Schexnider have not persuaded the Court that Holmes has no possibility of prevailing in his cause of action against Schexnider. The adequacy of his pleading of such a claim is a matter for later consideration but does not affect this jurisdictional analysis.

Since Schexnider was not fraudulently joined, the Court must consider his citizenship in determining whether complete diversity exists. It does not, since both Holmes and Schexnider are citizens of Louisiana, so the Court does not have original diversity jurisdiction over this case. In light of this conclusion, it is unnecessary to address whether CTS has adequately pled its own citizenship or whether the forum defendant rule would prevent removal of this action.

Having determined that the Court does not have original diversity jurisdiction, the Court must determine whether to exercise its supplemental jurisdiction over the remaining claims in this case.

    C.    <u>Supplemental Jurisdiction</u>

As noted above, the Court retains supplemental jurisdiction over the remaining claims in

this case because they are so related to Count IV that they form part of the same case or controversy. *See* 28 U.S.C. § 1367(a). However, the Court may decline to exercise that supplemental jurisdiction since the only claim over which it had original jurisdiction has been dismissed. *See* 28 U.S.C. § 1367(c)(3).

A district court has broad discretion in deciding whether to decline jurisdiction over state law claims when no original jurisdiction claim remains pending. *RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 478 (7th Cir. 2012). The district court should consider judicial economy, convenience, fairness and comity. *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "[W]hen the district court dismisses all federal claims before trial, the usual and preferred course is to remand the state claims to the state court unless there are countervailing considerations." *Payne for Hicks v. Churchich*, 161 F.3d 1030, 1043 (7th Cir. 1998) (citing *Wright*, 29 F.3d at 1251); *Beck v. Dobrowski*, 559 F.3d 680, 686 (7th Cir. 2009) (noting "the presumption that when a federal suit is dismissed before trial the court should relinquish any supplemental state-law claim to the state courts").

The Court finds no countervailing considerations counseling against the presumption of remand. This Court has not yet invested substantial resources and energy in this case, which is in its early stages; responsive pleadings have not been filed, and discovery will not be complete for nearly four months. Additionally, remanding this case would be the most efficient and fair way to resolve the remaining claims since Illinois state courts have more interest in administering and more expertise in applying state law issues like retaliatory discharge and intentional interference with economic advantage. Finally, there is no apparent inconvenience to either party in remanding this case to the forum where Holmes originally filed it. For these

reasons, the Court declines to exercise supplemental jurisdiction over the remaining claims in this case and will remand the case pursuant to 28 U.S.C. § 1367(c)(3). This ruling renders moot the remaining motions pending in this case.

## III. Conclusion

For the foregoing reasons, the Court:

- **GRANTS** Holmes' motion to remand (Doc. 24);

- **REMANDS** this case to the Circuit Court for the Third Judicial Circuit, Madison County, Illinois; and

- **DENIES without prejudice as moot** the following motions:

    - The defendants' motions to dismiss for failure to state a claim (Docs. 14, 18 & 37). The defendants may refile these motions in state court with reference to the appropriate state court pleading standards; and

    - CTS's motion for leave to file an amended notice of removal (Doc. 19).

**IT IS SO ORDERED.**
**DATED: June 29, 2017**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**